UNITED STATES DISTRICT COURT for the
MIDDLE DISTRICT of ALABAMA

| | |
|---|---|
| TOP NOTCH CONSULTING, INC.<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSAL CITY, LLC.; and<br>FREDERICK J. BEASLEY, III<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) CASE NO. ___2005-_____<br>)  2:05cv996-M<br>)<br>)<br>)<br>) |

## COMPLAINT
### JURISDICTION and STATEMENT OF THE PARTIES

1. Plaintiff, TOP NOTCH CONSULTING, INC. (herein referred to as "TOP NOTCH"), is a California corporation with its principal place of business in Oakland, CA 94612.

2. Defendant, UNIVERSAL CITY, LLC. (herein referred to as "UNIVERSAL "), is a registered Alabama Limited Liability Company doing business in Montgomery County Alabama.

3. Defendant, FREDERICK J. BEASLEY, III, who is also known as Fred Beasley and Frederick J. Beasley, is an individual over the age of nineteen and a resident of the state of Alabama.

4. This action is filed in this Court based upon and pursuant to the provisions of the *28 U.S.C.A. § 1332*. This action is proper in the United States District Court as the parties are citizens of different states and the amount in controversy exceeds $75,000.00 as well as general legal and equitable principles.

### STATEMENT OF THE FACTS

5. Top Notch is a California business that engages in the entertainment and restaurant business.

6. Top Notch and its owner William Brew created a business idea, plan and concept and

established a combination entertainment and restaurant business in California that was frequented by many professional athletes including Frederick Beasley.

7. Frederick Beasley enjoyed the business concept and discussed establishing a similar establishment in Montgomery Alabama with owner of Top Notch, William Brew.

8. William Brew created a successful establishment and marketable concept of entertainment and restaurant through his time effort and personal investments.

9. Frederick Beasley requested that William Brew travel to Montgomery Alabama and assist him in establishing a similar entertainment facility.

10. To further this business venture, Frederick Beasley established an Alabama business under the name Universal City, LLC.

11. Top Notch entered into a written contract for services with Universal on April 18, 2005, as the primary consultant to furnish labor, business knowledge, expertise and specifically those other services set out therein.

12. Based upon the execution of the contract and the monetary guarantees set out therein, the owner of Top Notch, William Brew, temporarily relocated in Montgomery, Alabama to provide the services to Universal.

13. The contract established compensation to be paid to Top Notch for the services to be provided under the contract.

14. Immediately after the execution of the contract, the Plaintiff relocated to Montgomery and commenced the services required under the contract and to provide to Universal the services specifically described in the contract.

15. Universal agreed to pay the monthly stipend of $5,000.00 beginning in May 2005.

16. Universal agreed to pay a minimum amount of $25,000.00 to Top Notch for monthly consulting services and subsequently agreed to pay $5,000.00 per month ongoing until requested to terminate the contract.

17. Universal agreed that, "upon closing the final loan a total percent of 10% will be split between mortgage fees and expenses and Top Notch".

18. Universal agreed to, "treat all materials prepared by Top Notch as confidential and shall not disclose, copy, or share such materials without the written consent of Top Notch".

19. Top Notch has not provided written permission pursuant to paragraph 3 of the agreement to Universal to further disclose, copy, or share such materials.

20. Universal has used the written materials prepared by Top Notch and continues to use the work product of Top Notch despite the written agreement requiring written permission.

21. Universal has not requested written permission from Top Notch to use the confidential materials or work products of Top Notch.

22. Universal is continuing to pursue the project after the oral termination of Top Notch.

23. Universal is continuing to use the same materials, concepts, ideas, business plan, vendors, suppliers, professionals, architects, loan companies, and other personnel organized by Top Notch for the project.

24. Universal has continued its relationship with Compass Bank and to use the materials previously generated by Top Notch.

25. Universal has continued its relationship with Citibank and to use the materials previously generated by Top Notch.

26. Universal has continued its relationship with architect Don Stansell and to use the

materials previously generated by Top Notch.

27. Universal has continued its relationship with the real estate company Aronov and to use the materials previously generated by Top Notch.

28. Universal has continued its relationship with Ken Anderson, who is using the work product of Top Notch without written permission and to use the materials previously generated by Top Notch.

29. Universal has continued its relationship with Brady Distributing Company and to use the materials previously generated by Top Notch.

30. Universal has continued its relationship with Creative Equipment Funding, LLC and to use the materials previously generated by Top Notch.

31. Universal has continued its relationship with Sandy Goodwin Brothers and to use the materials previously generated by Top Notch.

32. UNIVERSAL has paid Top Notch the total of sum of $20,000.00 of the contract amount and has refused to pay for the months of August, September, October and November.

33. UNIVERSAL, through Frederick Beasley, informed Top Notch by telephone on August 30, 2005, that the contract was revoked and that Top Notch was terminated from additional service.

34. The contract requires 30 days written notification of termination.

35. Universal provided written notification of termination on or about October 8, 2005.

36. Universal did not pay the $5,000.00 monthly fee due in August, September, October nor November.

37. The termination notice was delivered by certified mail to Top Notch at its place of

business in California.

38. Top Notch fully performed the services required by the original contract up to and including September 2, 2005.

39. Universal has provided no reason or other justification for its refusal to pay the monthly management fee.

40. Top Notch assisted Universal in obtaining a loan from Compass Bank in the amount of $100,000.00.

41. Universal was paid and received $100,000.00 from Compass Bank.

42. This loan was a closed loan and remains due and payable to Compass Bank.

43. Top Notch was entitled to a fee of $10,000.00 upon the closing and Universal has refused to pay the fee due under the contract.

44. Top Notch established a business relationship for Universal with Citibank.

45. Citibank approved a transaction whereby Universal would receive up to $831,000.00.

46. Top Notch was entitled to a fee of $83,100.00 upon the closing and Universal has refused to pay the fee due under the contract.

47. Top Notch established a business relationship for Universal with Creative Equipment Funding, LLC.

48. Creative Equipment Leasing, LLC., approved a $1,500,000.00 equipment leasing line of credit for Universal.

49. Top Notch was entitled to a fee of $150,000.00 upon the closing and Universal has refused to pay the fee due under the contract.

50. Top Notch established a business relationship for Universal with Brady Distributing

Company.

51. Brady Distributing Company approved a $600,000.00 equipment leasing and purchasing line of credit for Universal.

52. Top Notch was entitled to a fee of $60,000.00 upon the closing and Universal has refused to pay the fee due under the contract.

53. Universal has refused to pay the 10% commission due under the contract to Top Notch.

54. Universal is using the business materials, concepts and ideas generated by Top Notch without written permission.

## COUNT I
## BREACH OF CONTRACT

55. Top Notch asserts as if fully set forth herein paragraphs 1 through 54 above.

56. The parties entered into a contract that established detailed and specific duties of the parties.

57. Top Notch has fully performed the services as set out and required by the original contract.

58. In addition to the duties required in the original contract, Top Notch has performed numerous additional services as directed by and required by representatives and officers of UNIVERSAL.

59. UNIVERSAL has failed and refused to perform as required by the contract and

Alabama law in that UNIVERSAL has failed to pay the contract amount over to Top Notch for the services performed or to provide written reasons as to what services have not been provided and establish a value for each of the unperformed services and pay over the undisputed balance.

60. UNIVERSAL has failed to pay over to the Plaintiff the undisputed portions of the final pay request or provided detailed explanation as to what services have not been performed as required by Alabama law.

61. UNIVERSAL has breached the contract.

62. Top Notch has been damaged as a direct and proximate result of the breach by UNIVERSAL.

63. Top Notch is due the sum of $20,000.00 on the original contract for monthly payments and an amount exceeding $303,100.00, interest in the amount to be determined by the jury, attorney fees plus the costs of this case.

64. Top Notch is entitled to interest, costs of this action, attorney fees and such other relief as this court deems appropriate.

WHEREFORE, Plaintiff demands judgment against the Defendants, UNIVERSAL CITY, LLC. and Frederick Beasley in the amount of $350,000.00 for breach of contract for the original contract, the sum of $20,000.00 as damages for the breach concerning monthly payments, the sum of $100,000.00 in loss profits for breach of the contract, interest at a rate of 6% per annum from September 1, 2005, plus attorneys fees and costs of this action.

### COUNT II
### BREACH OF CONTRACT
### and INTERFERENCE WITH BUSINESS RELATIONS

65. The Plaintiff, Top Notch., hereby incorporates and adopts the information

found in the preceding paragraphs 1 through 64 as if fully set out and re-averred herein.

66. The contract entered into by the parties protected the work product of the Plaintiff from any unauthorized use, distribution or other taking by Defendant.

67. The Defendant has continued to use the work products of the Plaintiff and has or may have attempted to do one or all of the following: (1) called on various customers of Top Notch; (2) provide misleading, false and inaccurate information to the current customers of Top Notch., in an effort to convert them to continue the business relationship established by Top Notch; (3) provided misleading, false and inaccurate information to the others about Top Notch; (4) possessed various documents and other property that lawfully belongs to Plaintiff; and/or (5) worked and done acts to damage and destroy the business and reputation of Top Notch. Said conduct constitutes tortuous interference with business relations.

68. Defendants have full knowledge of the contract provision protecting the work product of Top Notch.

69. Said conduct and activity as described above, by Mr. Frederick Beasley and by Universal, has been performed without justification and has been done with the specific intent to damage and interfere with the business of Top Notch

70. All of the conduct described above has been designed to interfere with the business and reputation of Top Notch and constitutes a breach of the contract.

71. As a proximate result of the conduct described above, Top Notch., has been damaged and has suffered loss. Specifically, as a result of said conduct Top Notch has potentially lost intellectual property, customer and vendor lists, price lists, procedure manuals, and other intellectual

property rights, customers and business, has had its intellectual property and trade secrets disseminated, has been deprived of its property and in various other ways has been damaged.

WHEREFORE ALL PREMISES CONSIDERED, the Plaintiff, Top Notch, hereby DEMANDS judgment against the Defendants, Mr Frederick Beasley and Universal, for any and all compensatory damages necessary to make it whole. Plaintiff further demands interest, attorneys fees, and the costs of this action, as well as punitive damages to punish the entities named for their intentional misconduct. Top Notch, also pleads for any and all other relief which it may be justifiably entitled to under the law.

### COUNT III
### VIOLATION OF ALABAMA'S TRADE SECRETS ACT

72.     The Plaintiff, Top Notch, hereby incorporates and adopts the information found in the preceding paragraphs 1 through 71 as if fully set out and re-averred herein.

73.     The Plaintiff has not provided to the defendants permission to use any of its work products.

74.     The Defendant has not requested written permission to use the work products of the Plaintiff.

75.     Both Frederick Beasley and Universal have disseminated the intellectual property and trade secrets of Top Notch.

76.     The Defendants have disclosed and/or used the trade secrets of Top Notch, without privilege to do so, and is thus liable to Top Notch, for misappropriation of its trade secrets.

77.     The conduct and actions of Defendants have been and are in direct violation of Ala. Code, § 8-27-3 (1975), et.seq.

78. As a result of the described conduct, the Plaintiff, Top Notch., has been damaged and has suffered loss. Specifically, as a result of the Defendant's conduct and breach, Top Notch. , has lost customers and business, has had its intellectual property and trade secrets disseminated, has been deprived of its property and in various other ways has been damaged.

WHEREFORE ALL PREMISES CONSIDERED, the Plaintiff hereby DEMANDS judgment against the Defendants, for any and all damages appropriate, pursuant to the foregoing:

A. Such injunctive and other equitable relief as may be appropriate;

B. Recovery of any profits and other benefits conferred by the misappropriation that are attributable to the misappropriation

C. The actual damages suffered as a result of the misappropriation;

D. Reasonable attorney's fees;

E. Exemplary damages; and

F. Any and all other relief, to which it may be entitled under the law.

## COUNT IV
## QUANTUM MERUIT

79. The Plaintiff, Top Notch, hereby incorporates and adopts the information found in the preceding paragraphs 1 through 78 as if fully set out and re-averred herein.

80. Plaintiff performed certain services that benefitted the Defendants and is entitled to be compensated quantum meruit.

81. Each service rendered was performed at the direction of UNIVERSAL and was required to be performed by Top Notch per the written contract .

82. Each service performed was necessary to be completed in order for the work

required by the original contract to be completed or was an additional service requested by UNIVERSAL to be performed.

83. Each additional service performed was necessitated by the demands of UNIVERSAL.

WHEREFORE, Plaintiff demands judgment against the Defendants, Frederick Beasely and UNIVERSAL, for sums due under the original contract for all work performed and materials provided and for the extra services performed by Top Notch for the benefit of Defendants in an amount exceeding Four Hundred Thousand dollars ($400,000.00).

**RESPECTFULLY SUBMITTED**, this the 17th day of October, 2005.

_____
Mark N. Chambless (CHA013)

CHAMBLESS ❖ MATH, P.C.
Attorneys at Law
Post Office Box 230759
Montgomery, AL 36123-0759
Office (334) 272-2230
Facsimile (334) 272-1955