# MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement") is entered into this the ___ day of April 2005 by and between Universal City LLC, an Alabama Limited Liability Corporation (Universal) and Top Notch Consulting, Inc. (Top Notch), a California Corporation.

## BACKGROUND

Universal City, LLC. is endeavoring to create a full service entertainment and real estate development company designed to serve as a viable bridge from the NFL to the "World of Business". Universal will explore business opportunities in the areas of Entertainment, Office, Retail and Housing Development.

## RECITALS

WHEREAS, Universal is anticipating its needs into the next century by pursuing opportunities in the real estate development industry and entertainment industry; and

WHEREAS, Top Notch by reason of its experience, background, and professional contacts, is qualified and willing to render such services to Universal; and

WHEREAS, Universal desires to retain Top Notch to provide services pursuant to the terms and conditions hereinafter set forth in this Agreement;

NOW, THEREFORE, in consideration of the efforts expended and to be expended by them, and in consideration of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

## AGREEMENT

1. **Agreement to Provide Services:** Top Notch agrees to provide Universal the services outlined in Section 2 hereof, subject to and in accordance with the provisions of this Agreement.

2. **Scope of Services:** Top Notch shall provide the following services in connection with the development and financing of the Universal City Project (the Project):

    a. Prepare a complete business plan for the Project.

    b. Secure funding for the Project in a loan amount required by Universal.

    c. Prepare a budget for the Project, and determine the ongoing feasibility of the Project.

    d. Arrange, assist and advise with Project financing and construction.

e. Package documents, interview, and advise on the selection of lending institution(s);

f. Complete grant and loan applications and other applications for any other sources of financing or subsidy;

g. Negotiate on behalf of Universal with respect to contractual agreements and construction issues that arise during the preconstruction period;

h. Create project design and interior layouts for the permit process, and work with the city and county to assist with securing all government agency permits and licensing for the project;

I. Act as liaison between general contractor and Universal;

j. Coordinate any pre-construction meetings;

k. Review and bid documentation and make recommendations;

l. Advise on administrative, organizational, and management systems;

m. Participate in meeting with Universal clients, political officials, and others as deemed necessary and appropriate;

n. Produce a weekly Project Summary;

o. Complete the business plan.

P. Open and manage the project until Universal has obtained permanent management.

3. <u>Agreement to Engage:</u> In consideration of this Agreement, Universal agrees that they shall treat all materials prepared by Top Notch as confidential and shall not disclose, copy, or share such materials without written consent of Top Notch.

4. <u>Compensation:</u> In consideration for the services enumerated above, Universal shall pay to Top Notch a management fee of $5000.00 per month beginning in May, 2005 and each month thereafter until $25,000.00 is paid, plus reasonable expenses to include lodging, food, and transportation to be approved by Universal.

Upon closing the final loan a total percent of 10% will be split between mortgagee fees and expenses and Top Notch. All mortgagee expenses will be paid first and the balance of the 10% will be paid to Top Notch.

5. <u>Term:</u> The term of this Agreement shall be from the date hereof through the Grand Opening of the subject venue and continue with management until Universal has permanent management. Notwithstanding the foregoing, Universal may terminate this Agreement by providing Top Notch thirty (30) days written notice.

6. <u>Accounting and Right of Inspection:</u> Top Notch will maintain accurate books and records of all transactions concerning Universal. All said records solely relating to Universal may be inspected by Universal or a designated certified public accountant, during regular business hours, at Universal's sole expense. Universal shall provide Top Notch with written notification at least seven (7) days prior to the desired date of said inspection.

7. <u>Use of Other Consultants:</u> Universal acknowledges that Top Notch is not providing legal, engineering, architectural, or professional accounting services. To the extent that Top Notch or Universal believe that such professional services may be required, Top Notch will work with Universal to identify and negotiate costs and Statements of Work with appropriate individuals to provide such professional services.

8. <u>Assignment of Agreement:</u> No assignment of the rights or benefits and no delegation of duties provided in this Agreement may be made without the written consent of the non-assigning or non-delegating party; provided, however, that Top Notch may subcontract certain or all of the services to be performed under this Agreement. In such case, Top Notch shall still retain primary liability for their performance under this Agreement.

9. <u>Non-Compete Disclosure:</u> Top Notch agrees not to compete with Universal with respect to any Universal venture covered by this Agreement in the local market of such venture.

10. <u>Cancellation:</u> If for any reason Universal decides not to proceed with recommended development plans, Universal agrees to reimburse Top Notch for all expenses incurred in the development of the plans, applications, and other development related experiences.

11. <u>Saving Clause:</u> If one or more provisions of this Agreement or any application of any provision shall be deemed or declared invalid, illegal, or unenforceable in any respect, the validity, legality, or enforceability of the remaining provisions of this Agreement shall in no way be affected or impaired. The laws of the State of Alabama shall govern this Agreement. Any action to enforce, arising out of, or relating in any way to, any of the provisions of this Agreement shall be brought and prosecuted only in such court or courts located in the State of Alabama as is provided by law; and the parties consent to the jurisdiction of said court or courts located in the State of Alabama.

12. <u>Modification:</u> This Agreement shall not be changed, modified, or amended except in writing and signed by all parties.

13. <u>Status of Parties:</u> The relationship created by the Agreement shall be, at all times and in all circumstances one of contractor/independent contractor and shall not be one of employer/employee. This Agreement shall not create a joint venture or partnership among the parties for any intents, purposes, and designs or in any activities or properties.

14. <u>No Continuing Waiver:</u> The waiver of any party of a breach of any provision of this Agreement shall not operate or be construed to be a waiver of any subsequent breach. No waiver shall be effective unless in writing and signed by the party against whom it is sought to be

enforced. A breach by one party of its duties to another party shall not, of itself, be deemed a breach by any other party of its obligations under this Agreement.

15. <u>Binding Nature:</u> This Agreement shall bind and inure to the benefit and burden of the parties, their personal representatives, successors and assigns.

16. <u>Integration:</u> This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement and supercedes all of the contemporaneous agreements or understandings of the parties in connection with this subject matter.

The parties hereto have executed this Agreement as of the date first set forth above.

Top Notch Consulting, Inc.

By: /s/ William Brew
William Brew, Its President

Universal City, LLC

By: /s/ Fred Beasley
Fred Beasley, Its Manager


STATE OF _____
COUNTY OF _____

I, the undersigned authority, a Notary Public for the State of _____, do hereby certify that **William Brew**, whose name is signed above; did personally appear before me this day and, being informed of the contents of the conveyance, did sign the same voluntarily.
Given under my hand and seal this the _____ day of _____, 2005.

_____
Notary Public

My Commission Expires:_____

STATE OF CALIFORNIA )
COUNTY OF ALAMEDA   )

On May 5, 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared William Brew, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Carol A. Harpster_
NOTARY PUBLIC

CAROL A. HARPSTER
COMM. #1539682
NOTARY PUBLIC-CALIFORNIA
COUNTY OF ALAMEDA
My Comm. Exp. Dec. 30, 2008