## UNITED STATES DISTRICT COURT for the
## MIDDLE DISTRICT of ALABAMA

| | |
|---|---|
| **TOP NOTCH CONSULTING, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) CASE NO.   **2:05-cv-996-MHT** |
| | ) |
| **UNIVERSAL CITY, LLC.; and** | ) |
| **FREDERICK J. BEASLEY, III** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONTINUE

Comes now the Plaintiff by and through counsel of record and hereby responds to the motion to continue and would show unto this court as follows:

1.  The Plaintiff does not object to continuance of the trial.
2.  The Plaintiff has responded to the Interrogatories on three separate occasions.
3.  The Plaintiff has provided to the Defendant's every document in his possession involving this contract dispute on three occasion.
4.  The documents have been provided and marked and or labeled the files.
5.  The documents have been provided again on May 24, 2006, in files marked by interrogatory number.
6.  The statement that the Defendants have not received a signed response to discovery is misleading.
7.  The Plaintiff's attorney personally delivered one box of materials to Counsel for Defendant on March 7, 2006. Along with the unsigned answers. (See Letter and Fax marked Exhibit 1).
8.  The Plaintiff's counsel faxed to the Defendant's counsel signed answers on March 8, 2006. (See Exhibit 2).
9.  The Plaintiff's attorney personally delivered a second box of materials to Counsel for Defendant on March 8, 2006. (See Exhibit 3).
10. The Plaintiff's attorney personally delivered a third box of materials to Counsel for Defendant on March 8, 2006. (See Exhibit 3).
11. On March 13, 2006, the signed copy of the interrogatories were delivered by United States mail to Counsel for the Defendant. (See Certificate on Exhibit 4).
12. Plaintiff's counsel sent an email to Defendants Counsel on March 13, 2006 concerning the signed responses. See email reply as well. (See Exhibit 5).
13. Defendant's counsel responded to e-mail and the same acknowledges receipt of 2 boxes of documents.  (See Exhibit 6).
14. Plaintiff's counsel was not available on Thursday or Friday and on March 17, 2006, without communicating with Plaintiff's counsel, filed a Supplemental Motion to

Compel.

15.    The Plaintiff is attempting in every manner to provide to the Defendant all materials involved on this project, to answer fully the interrogatories and further attempting to comply with the courts orders.

16.    The Plaintiff again, does not object to a continuance in order to have the discovery proceed in an orderly and timely fashion.

RESPECTFULLY SUBMITTED, this the 25th day of May, 2006.

Mark N. Chambless (CHA013)

CHAMBLESS MATH ❖ CARR, P.C.
Attorneys at Law
Post Office Box 230759
Montgomery, AL 36123-0759
Office (334) 272-2230

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served on all parties or attorneys of record as set forth below by hand delivery to the law office of counsel and depositing a copy thereof in the United States mail postage prepaid on this 25 th day of May, 2006.

OF COUNSEL

Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110

MEMORY TRANSMISSION REPORT

```
                              TIME      :03-07-'06 14:20
                              FAX NO.1  :334-272-1955
                              NAME      :Chambless Math, PC
```

```
FILE NO.          :   191
DATE              :   03.07 14:18
TO                : ☎ 3968880
DOCUMENT PAGES    :   1
START TIME        :   03.07 14:19
END TIME          :   03.07 14:20
PAGES SENT        :   1
STATUS            :   OK
```

```
        ***   SUCCESSFUL TX NOTICE     ***
```

## Chambless ❖ Math
### A Professional Corporation

Mark N. Chambless
Leonard N. Math~
Karen F. Chambless
Brian W. Moore
Bernard B. Carr
Zack M. Azar
Michael A. Griggs
Katherine E. Luders
Kristen F. Southworth

Post Office Box 230759
Montgomery, Alabama  36123-0759
Telephone (334) 272-2230
(800) 311-4061
Facsimile  (334) 272-1955
Website: www.chamblessmath.com

Of Counsel:
E. Terry Brown
Michael E. Bybee
Kent D. McPhail
Geoffrey Alexander

*Also admitted to the
Illinois Bar

March 7, 2006

**Facsimile Number: 334-396-8880**

Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110

    Re:    Top Notch Consulting v. Universal City, LLC and Frederick Beasley, III.

Dear Jeff:

    I delivered one box of documents to you today. Please copy whatever you desire from that box and return original box to me. I called your office on the other primary document box and it was delivered to me today. I have contacted Action Legal Copy Service and requested that they make one copy of each document for you. These should be ready for you to pick up on Wednesday afternoon or Thursday morning.

               Sincerely yours,

               Mark N. Chambless

enc.
cc:    Top Notch Consulting, Inc.

    W. Terry Travis
    Post Office Box 1871
    Montgomery, AL 36102-1871
    By Fax 334-262-3339

Montgomery Office ■ 5720 Carmichael Road ■ Montgomery, Alabama 36117 ■ (334) 272-2230 Voice ■ (334) 272-1955 Facsimile
Birmingham Office ■ 2107 5ᵗʰ Avenue North ■ Suite 200 ■ Birmingham, Alabama 35203 ■ (205) 252-1622 Voice ■ (205) 252-2888 Facsimile
Mobile Office ■ 126 Government Street ■ Mobile, Alabama 36601 ■ (251) 438-2333 Voice ■ (251) 438-2367 Facsimile



PLAINTIFF'S EXHIBIT
1

PLAINTIFF'S
EXHIBIT
2



# Chambless ❖ Math

**A Professional Corporation**

Mark N. Chambless
Leonard N. Math*
Karen P. Chambless
Brian W. Moore
Bernard B. Carr
Daniel L. Feinstein
Zack M. Azar
Michael A. Griggs
Katherine E. Luders
Kristen P. Southworth

Post Office Box 230759
Montgomery, Alabama 36123-0759
Telephone (334)272-2230
(800)311-4061
Facsimile (334)272-1955
Website: www.chamblessmath.com

Of Counsel:
E. Terry Brown
Michael E. Bybee
Kent D. McPhail
Jeanna D. Chappell

\* Also admitted to the
Illinois Bar

## *FACSIMILE TRANSMITTAL SHEET*

CLIENT NAME / NUMBER: _____

FAX NUMBER: _____ 396-8850

TO: _____ Jeff Smith

FROM: _____ Mark Chambless

DATE: _____ 3/8/06

NUMBER OF SHEETS: _____ 8 _____ (Including Cover Page)

SPECIAL INSTRUCTIONS OR REMARKS:

_____ Jeff – Original to be filed Thursday or Friday.

Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by telephone and return the original message to us at the above address via U.S Postal Service. Thank you.

If you do not receive all pages of transmission, please call as soon as possible at (334)272-2230, Ext._____ and ask for _____.

Montgomery Office ▪ 5720 Carmichael Road ▪ Montgomery, Alabama 36117 ▪ (334) 272-2230 Voice ▪ (334) 272-1955 Facsimile
Birmingham Office ▪ 2107 5th Avenue North ▪ Suite 200 ▪ Birmingham, Alabama 35203 ▪ (205) 251-6565 Voice ▪ (205) 252-2888 Facsimile
Mobile Office ▪ 126 Government Street ▪ Mobile, AL 36601 ▪ (251) 438-2333 Voice ▪ (251) 438-2367 Facsimile

UNITED STATES DISTRICT COURT for the
MIDDLE DISTRICT of ALABAMA

TOP NOTCH CONSULTING, INC.              )
                                        )
    Plaintiff,     )
                                        )
v.                                      )  CASE NO.  2:05-cv-996-MHT
                                        )
UNIVERSAL CITY, LLC.; and               )
FREDERICK J. BEASLEY, III               )
                                        )
    Defendants.    )

## PLAINTIFFS ANSWERS TO FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION.

Comes Now, Top Notch Consulting, Inc., and hereby responds as follows:

1.   William Edward Brew. Born April 12, 1961.

2.   Incorporated May 1, 2003 and the company is an active corporation. See documents provided.

3.   The information requested in this question is being provided and copies of any such document in my control or possession is being produced.

4.   No such list is available. I have attached a list of clients I have worked for and with over the years.

5.   Not applicable

6.   I have attended college and graduated with BA.  I have a minor in speech.  I was a college athlete and traveled extensively during college and since.  Following college I was involved with various businesses and training through these businesses.  With each of these businesses I was required to travel, market and entertain clients and customers.  I established my first business in 1995.  This was a billiards and entertainment center and offered food and beverage services. I established this business myself.  I set up business, hired all the employees and ran the business myself.  I spent hundreds of hours at the business.  I established a sports bar in the year 2003 named Brews Sports Bar.  This was an entertainment facility.  I established a restaurant, bar, television, and entertainment center at this facility.  This was a new concept and offered facilities to draw in patrons from lunch until the late hours of night.  Both families and single persons were drawn in to this facility.  I established this business myself.  I set up business, hired all the employees, selected the entertainment games and features, and ran the business myself.  I spent hundreds and thousands of hours at the business. I was hired to assist in the

establishment of another sports bar known as The Coaches Corner in the year 2003. Each of these businesses required specialized education, training, experience and expertise in the food service, entertainment and restaurant businesses. The concept I created at First Place Sports Bar is what attracted Mr. Beasley to me. Mr. Beasley was a regular patron of First Place. He came in often and brought friends and acquaintances. He told me on many occasions that he liked coming to First Place and loved the family atmosphere as well as the night life entertainment offered later in the evening. He stated on several occasions that he thought the concept established at First Place would work in other cities. This business concept was developed by me. Each of these businesses created special client contacts, information, education, training and expertise in the industry.

7.    The originals and all computer information remain in Montgomery in the possession of the defendant. The copy I have is attached. The business plan was developed from First Place and Brews, and was never completed so there is no final business plan developed as of August 30, 2005.

8.    The originals and all computer information remain in Montgomery in the possession of the defendant. The defendant requested and required that I vacate my rental property of four months on 24 hours notice and required that I leave behind all business information that was owned by me pursuant to the contract. Due to the threats of criminal prosecution by Fred Beasley, I was required to leave behind all of my records, files, computer information, telephone records, and other information. All of these remain in the possession of Mr. Beasley. All of the documents that I have copies of have been provided to counsel for Defendants. All documents used by me or prepared by me on this project are confidential and belong to me by contract and no authorization has been provided to any party or person to use the same.

9.    Following the oral demand made to me on August 30 to vacate the rental property and oral notice to terminate me, I have discussed the project with several of the persons involved in the project. Each person I have spoken to has informed me that the project is ongoing and that the plans are similar to or identical to the plans developed by me. It is my understanding from these persons that the persons involved, the designs, the program, the layouts and the equipment selections and layout, remain basically unchanged. Through my efforts, approximately $3,410,000.00 in loans had been approved and secured to fund this project. This occurred despite the assistance of Mr. Beasley. It is my understanding that most of these parties remain involved in the project and willing to close the loans if the appropriate documents are delivered. Since I have left Montgomery, I have been informed of the above by Ken Anderson, Wendy and Rob from Compass Bank, Steve Wallace, Joe Bohannon, Kyle, Don Stansel, and Sandy Goodwin. It is my understanding that all materials used by me and created by me to create this project are still in use and being used by each of the above parties.

10.    The contract prepared by Fred's attorney and signed by the parties requires 30 days written notice of termination and the payment of $5,000.00 per month until such time. The written notice was delivered to me on October 8, 2005. I was not paid in September, October or November. I am due $15,000.00, plus 10% of the loans secured, plus damages

for breach and those set out in the complaint.

11.    I was referred to Compass Bank by Steve Wallace. I met with Compass, prepared all paper work and delivered the existing business plan to Compass. I performed all duties necessary to see that the loan was obtained. Fred Beasley has all of the loan documents. Based upon my efforts, Compass Bank funded a loan in the amount of $100,000.00 for this project. Compass also informed me that the primary loan for this project was approved, and upon the completion of the appropriate documents, would be funded. My primary communications with Compass Bank were through Rob Hortenstein and Wendy.

12.    The documents have been produced. I used my personal contacts with Citi to set up and establish this relationship. I contacted all necessary persons to see that the loan process was started and followed up on all aspects of the same to completion. This was a complicated loan as it would have been a mortgage loan with several properties involved in a refinance that would result in cash back to Mr. Beasley based upon the vaulues of the properties given to Citi by Mr. Beasley. Citi agreed to a new mortgage loan that would allow Mr. Beasley to be paid $831,000.00 at the closing. All documents are in the possession of the defendants. I have attached any copies of the same I have. I dealt extensively with Joe Bohannan and Marshall Kito on this part of the project. This was a very important part of the funding of this project as this would have allowed Fred to receive cash money to run the project and operate the first few months. This loan process was very difficult as it was difficult to obtain the necessary information from Mr. Beasley and the loan required me to sell CITI on the project. From May until August 30, I worked at least 8 hours per day on this project to see that it was opened. I generally spent more than 40 hours per week to see that the project was completed and opened. Fred has access to the telephone records and these will show the number of calls to each vendor or potential bank, equipment provider, bank or loan company.

13.    Same as 12 above. I worked extensively with Chris Shields and Bill from Creative. I tried to establish a good relationship with Creative and I feel that I did establish a good positive relationship with Creative as they would be the primary loan source for the equipment rental or purchase. I negotiated a lease purchase arrangement with Creative. The equipment costs for a project like this are very high as the games and other entertainment machines, are very expensive. These games draw persons into the facility and act as the primary marketing tool for the business. It was critical to obtain as much money as possible to purchase the very best equipment and gaming machines. I had negotiated a $1,500,000.00 line of credit on a lease purchase arrangement.

14.    Same as 12 and 13 above. My primary contact at Brady was Larry E. Cooke. I also consulted with Ken Anderson and Birmingham Vending on this aspect of the project. Brady had approved a line of credit in the amount of $600,000.00 due to my efforts.

15.    I met with hundreds of persons and made thousands of calls on this project. I worked on every aspect of starting, opening and running this business. I met with Realtors, kitchen specialists, equipment vendors, gaming vendors, lighting specialists, sign persons, City, County and State officials, lawyers, carpet persons. I met with every kind of person to see that this business opened. I worked on plates, glasses and napkins for the business. I was

required to traveled with Fred Beasley to cover for his personal activities on the trips. I had to keep and maintain his secrets and other personal non-business confidences he placed on me. I was misled form the first time we meet to discuss the project in Montgomery. I was misled about Mr. Beasley's finances in that he informed me he had the finances to open a $3,000,000.00 facility. From the first day he asked me about helping him, he informed me that the facility would be a $3,000,000.00 facility. My agreement to come to Alabama and leave my family for six months was based upon 10% of this figure and this understanding and agreement. In fact, every loan obtained was difficult to arrange including the $100,000.00 loan from Compass. I had to do many, many personal favors for Fred and his family. I had to deal with his family, spouse, children and relatives daily. All the while, he would complain if I tried to spend one moment or any time with my family in California. Mr. Beasley complained openly to me and others about me spending one week vacation with my family during the entire summer of 2005. I met with Sandy Goodwin, met with hundreds of people, made hundreds of calls to establish this business and create a plan that would work in Montgomery. I spent hundreds of hours with architects, Realtors, sign designers, establishing the corporation, meeting with Mr. Beasley's attorney Randy Moore, obtained the liquor license, dealing with state, city and county officials on this project. I had to learn about the Alabama ABC board and its representatives. I established marketing contacts and insurance contacts. I established graphic designs, logos and other print information. All these efforts were made in contemplation of the 10% percentage promised me. All the while Fred intended to get all the way down the road and within weeks of opening and then fire me before any loan closing and stiff me on my fees. I should have seen this coming when every vendor that had an open invoice was not paid and came to me complaining and requesting my intervention to get paid. When these persons were complaining, we had a difficult time obtaining the $100,000.00 loan. Mr. Beasley refused to pay his attorney fees and the architectural fees despite their excellent service to Universal and Fred. I have provided many documents that set out many, many other services performed.

16.   Ken and Fred converted the plans, designs, relationships, concepts and business plan that was developed by me and the contacts I had established. Each person involved in this project was informed that I had been fired or terminated for cause. Each of these actions appear to have been taken by Fred and Universal to discharge me and take over the project in an effort to save 10%. These loans were pending and ready to close. I came to Alabama on the agreement I would be paid $300,000.00 or more when the project was funded and the loans approved. Ken and or Fred has called each of the contacts I established and informed them that I am a crook. They were informed that I had been terminated before any notice was provided to me. Theses contacts were informed to do business with Fred and Ken, not to listen to me. They were informed that all future contact should be through Fred or Ken. A current customer of mine named Sharon Ringgenberg was also called by Mr. Beasley and informed about alleged problems between Fred and myself. Fred told me he would put my name in the California papers if I sued him and did not drop my claim for compensation.

17.   See 16 above. Each of the contacts made to the vendors involved in this project and the false statements made to them will prevent me from using these contacts in the future.

Fred has tried in every way to damage my reputation with the vendors involved in this project.

18.    See 16 and 17 above. By not paying me per the contract, I have suffered major financial problems as seen in these requests. By requiring me to leave Montgomery on 1 days notice on the last day of the month and refusing to pay per the contracts, I have suffered severe financial distress and emotional distress. Mr. Beasley knew that the monthly stipend paid to me was used to pay my California mortgage and was necessary to my financial ability to pay my monthly bills in California. My family has suffered and my business has suffered due to Mr. Beasley providing me 24 hours notice of termination and no monthly payment for September or after. I have been sued in California due to the breach of this contract by Fred Beasley and Universal. I have had judgments entered against me in California and against my company due to the actions of Universal and Mr. Beasley. I set out the damages in the complaint.

19.    See 16, 17 and 18 above. I am due $15,000.00 for monthly contract payments. I am due at least $300,000.00 for commissions. I am due damages as set out in the complaint for willful breach of contract. I am entitled to be paid for the wrongful use of my work product without my permission. I am entitled to damages for Mr. Beasley and Universal's interference with my business relationships and contracts. The documents developed by me on this project are protected work product and the use of the same by Mr. Beaseley, Universal or any other person or business without my permission is a violation of Alabama Trade Secrets Act. The violation of this act allows punitive damages. All of the acts set out in the complaint have damaged me personally, financially and professionally.

20.    The information I prepared for this project belonged to Top Notch. Each item of information developed was intended for use in this business but was information belonging to Top Notch. The information contained systems, techniques, processes, patterns of practice, drawings, layouts and other specialized information. The information was not readily available to the general public. This information belonged to Top Notch. The information obtained and kept by Universal and Fred Beasley was obtained by breach of confidence, misrepresentation or conversion. All information belonging to Top Notch has been misappropriated.

21.    Tax returns for the years 2004 and 2005 will be provided.

22.    I do not know who my attorney will call at this time. I expect the persons named in these answers will be called. I expect that each company that approved a loan will be called upon to testify.

23.    These records have been produced or are currently in the possession of the Defendant.

24.    Randy Moore, Greg Lions, Mr. Beasley and myself.

25.    These records are readily available to the defendant as they have all the records.

26.    I signed the application with CEF at the direction of Fred Beasley and using the financial information Mr. Beasley requested that I provide to this and other potential loan companies. Specifically, when I called Mr. Beasley to discuss this particular application for credit and discussed this application he said, "Throw my signature on there and when original loan documents come in I will sign". This was a credit application for authorizing equipment financing.

27.    This question asks me to state in writing everything I did over a five month period. I worked 40 to 75 hours per week during this time and made thousands of telephone calls and went to many different cities and meet with hundreds of persons. There is no way to answer this question in writing and is onerous. If I were to set out everything I did for the five months I worked with Universal it would take hundreds of pages to write. The proof is in the letters of credit and loan approvals. I spent many hours on this but this task was not even suppose to be a part of this project. I was told that Fred had the $3,000,000.00 to set up this project. My original agreement was to coordinate the project and open the same. I was never informed that I would be required to spend time obtaining financing. I was not then nor now a financier. Fred misrepresented the project to me from the start. I knew I could set up the business within five months but it turned out that there was no financing and most every aspect of this project was delayed due to the false representation made to me from the start. I fully performed to the best of my ability while Fred just misrepresented the facts to me from the start. I lost six months of my business life due to the false statements and misrepresentation of Fred Beasley.

28.    Almost every item in the apartment or at the business was purchased by me. All of the items purchased are the property of Universal and in the possession of Universal except the fax machine. The fax machine is still in my possession as Mr. Beasley has not picked up the same nor provided me with shipping information.

**RESPECTFULLY SUBMITTED**, this the 20th day of October, 2005.

William E. Brew

Mark N. Chambless (CHA013)

CHAMBLESS □ MATH, P.C.
Attorneys at Law
Post Office Box 230759
Montgomery, AL 36123-0759
Office (334) 272-2230

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served on all parties or attorneys of record as set forth below by depositing a copy thereof in the United States mail postage prepaid on this _____ th day of March, 2006.


_____
OF COUNSEL


Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110

MEMORY TRANSMISSION REPORT

|  |  |
|---|---|
| TIME | : 03-08-'06 09:04 |
| FAX NO.1 | : 334-272-1955 |
| NAME | : Chambless Math, PC |

| | | |
|---|---|---|
| FILE NO. | : | 193 |
| DATE | : | 03.08 09:04 |
| TO | : ☎ | 3968880 |
| DOCUMENT PAGES | : | 1 |
| START TIME | : | 03.08 09:04 |
| END TIME | : | 03.08 09:04 |
| PAGES SENT | : | 1 |
| STATUS | : | OK |

\*\*\*    SUCCESSFUL TX NOTICE    \*\*\*

## Chambless ❖ Math
### A Professional Corporation

Mark N. Chambless
Leonard N. Math*
Karen P. Chambless
Brian W. Moore
Bernard B. Carr
Zack M. Azar
Michael A. Griggs
Katherine E. Luders
Kristen P. Southworth

Post Office Box 230759
Montgomery, Alabama 36123-0759
Telephone  (334) 272-2230
(800) 311-4061
Facsimile  (334) 272-1955
Website: www.chamblessmath.com

Of Counsel:
E. Terry Brown
Michael E. Bybee
Kent D. McPhail
Geoffrey Alexander

*Also admitted to the
Illinois Bar

March 8, 2006

**Facsimile Number: 334-396-8880**

Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110

Re:    Top Notch Consulting v. Universal City, LLC and Frederick Beasley, III.

Dear Jeff:

Please accept this letter as a follow up to our conversations concerning the delay I have experienced in delivering the discovery to you. I have delivered two boxes of materials to you. I am delivering a third box of materials that you need to review. These are originals from my clients desk and office. I did not think you would want to me copy and so these are the originals as stored by my client. Please copy if you desire and return originals to me.

I have delivered by email, the answers to your interrogatories to my client. Mr. Brew will review today and make any changes necessary. I expect that Mr. Brew will sign today and forward answers to me by fax and overnight delivery. I will provide to you a faxed copy today. The originals will be delivered to me for filing with the court and copy to you. These originals should be received Thursday or Friday.

I would like to schedule your clients deposition and request dates for the same. Please review your calendar and call me to discuss depositions. There are six (6) other depositions that I want to schedule and so we need to select 2 or 3 days to take these. Several of these will be out of state and I expect all depositions in this case to be trial depositions.

Sincerely yours,

Mark N. Chambless

enc.
cc:    Top Notch Consulting, Inc.

W. Terry Travis
Post Office Box 1871
Montgomery, AL 36102-1871

Montgomery Office ▪ 5720 Carmichael Road ▪ Montgomery, Alabama 36117 ▪ (334) 272-2230 Voice ▪ (334) 272-1955 Facsimile
Birmingham Office ▪ 2107 5th Avenue North ▪ Suite 200 ▪ Birmingham, Alabama 35203 ▪ (205) 252-1622 Voice ▪ (205) 252-2888 Facsimile
Mobile Office ▪ 126 Government Street ▪ Mobile, Alabama 36601 ▪ (251) 438-2333 Voice ▪ (251) 438-2367 Facsimile



PLAINTIFF'S
EXHIBIT
**3**

Blumberg No. 5113

PLAINTIFF'S
EXHIBIT
4

UNITED STATES DISTRICT COURT for the
MIDDLE DISTRICT of ALABAMA

| | |
|---|---|
| TOP NOTCH CONSULTING, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:05-cv-996-MHT |
| | ) |
| UNIVERSAL CITY, LLC.; and | ) |
| FREDERICK J. BEASLEY, III | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS ANSWERS TO FIRST INTERROGATORIES
## AND REQUEST FOR PRODUCTION.

Comes Now, Top Notch Consulting, Inc., and hereby responds as follows:

1.    William Edward Brew. Born April 12, 1961.

2.    Incorporated May 1, 2003 and the company is an active corporation. See documents provided.

3.    The information requested in this question is being provided and copies of any such document in my control or possession is being produced.

4.    No such list is available. I have attached a list of clients I have worked for and with over the years.

5.    Not applicable

6.    I have attended college and graduated with BA. I have a minor in speech. I was a college athlete and traveled extensively during college and since. Following college I was involved with various businesses and training through these businesses. With each of these businesses I was required to travel, market and entertain clients and customers. I established my first business in 1995. This was a billiards and entertainment center and offered food and beverage services. I established this business myself. I set up business, hired all the employees and ran the business myself. I spent hundreds of hours at the business. I established a sports bar in the year 2003 named Brews Sports Bar. This was an entertainment facility. I established a restaurant, bar, television, and entertainment center at this facility. This was a new concept and offered facilities to draw in patrons from lunch until the late hours of night. Both families and single persons were drawn in to this facility. I established this business myself. I set up business, hired all the employees, selected the entertainment games and features, and ran the business myself. I spent hundreds and thousands of hours at the business. I was hired to assist in the

establishment of another sports bar known as The Coaches Corner in the year 2003. Each of these businesses required specialized education, training, experience and expertise in the food service, entertainment and restaurant businesses. The concept I created at First Place Sports Bar is what attracted Mr. Beasley to me. Mr. Beasley was a regular patron of First Place. He came in often and brought friends and acquaintances  He told me on many occasions that he liked coming to First Place and loved the family atmosphere as well as the night life entertainment offered later in the evening. He stated on several occasions that he thought the concept established at First Place would work in other cities. This business concept was developed by me. Each of these businesses created special client contacts, information, education, training and expertise in the industry.

7.     The originals and all computer information remain in Montgomery in the possession of the defendant. The copy I have is attached. The business plan was developed from First Place and Brews, and was never completed so there is no final business plan developed as of August 30, 2005.

8.     The originals and all computer information remain in Montgomery in the possession of the defendant. The defendant requested and required that I vacate my rental property of four months on 24 hours notice and required that I leave behind all business information that was owned by me pursuant to the contract.  Due to the threats of criminal prosecution by Fred Beasley, I was required to leave behind all of my records, files, computer information, telephone records, and other information. All of these remain in the possession of Mr. Beasley. All of the documents that I have copies of have been provided to counsel for Defendants. All documents used by me or prepared by me on this project are confidential and belong to me by contract and no authorization has been provided to any party or person to use the same.

9.     Following the oral demand made to me on August 30 to vacate the rental property and oral notice to terminate me, I have discussed the project with several of the persons involved in the project. Each person I have spoken to has informed me that the project is ongoing and that the plans are similar to or identical to the plans developed by me.  It is my understanding from these persons that the persons involved, the designs, the program, the layouts and the equipment selections and layout, remain basically unchanged. Through my efforts, approximately $3,410,000.00 in loans had been approved and secured to fund this project. This occurred despite the assistance of Mr. Beasley. It is my understanding that most of these parties remain involved in the project and willing to close the loans if the appropriate documents are delivered.   Since I have left Montgomery, I have been informed of the above by Ken Anderson, Wendy and Rob from Compass Bank, Steve Wallace, Joe Bohannon, Kyle, Don Stansel, and Sandy Goodwin. It is my understanding that all materials used by me and created by me to create this project are still in use and being used by each of the above parties.

10.     The contract prepared by Fred's attorney and signed by the parties requires 30 days written notice of termination and the payment of $5,000.00 per month until such time. The written notice was delivered to me on October 8, 2005. I was not paid in September, October or November. I am due $15,000.00, plus 10% of the loans secured, plus damages

for breach and those set out in the complaint.

11.   I was referred to Compass Bank by Steve Wallace. I met with Compass, prepared all paper work and delivered the existing business plan to Compass. I performed all duties necessary to see that the loan was obtained. Fred Beasley has all of the loan documents. Based upon my efforts, Compass Bank funded a loan in the amount of $100,000.00 for this project. Compass also informed me that the primary loan for this project was approved, and upon the completion of the appropriate documents, would be funded. My primary communications with Compass Bank were through Rob Hortenstein and Wendy.

12.   The documents have been produced. I used my personal contacts with Citi to set up and establish this relationship. I contacted all necessary persons to see that the loan process was started and followed up on all aspects of the same to completion. This was a complicated loan as it would have been a mortgage loan with several properties involved in a refinance that would result in cash back to Mr. Beasley based upon the vaulues of the properties given to Citi by Mr. Beasley. Citi agreed to a new mortgage loan that would allow Mr. Beasley to be paid $831,000.00 at the closing. All documents are in the possession of the defendants. I have attached any copies of the same I have. I dealt extensively with Joe Bohannan and Marshall Kito on this part of the project. This was a very important part of the funding of this project as this would have allowed Fred to receive cash money to run the project and operate the first few months. This loan process was very difficult as it was difficult to obtain the necessary information from Mr. Beasley and the loan required me to sell CITI on the project. From May until August 30, I worked at least 8 hours per day on this project to see that it was opened.  I generally spent more than 40 hours per week to see that the project was completed and opened.  Fred has access to the telephone records and these will show the number of calls to each vendor or potential bank, equipment provider, bank or loan company.

13.   Same as 12 above. I worked extensively with Chris Shields and Bill from Creative.  I tried to establish a good relationship with Creative and I feel that I did establish a good positive relationship with Creative as they would be the primary loan source for the equipment rental or purchase.  I negotiated a lease purchase arrangement with Creative. The equipment costs for a project like this are very high as the games and other entertainment machines are very expensive. These games draw persons into the facility and act as the primary marketing tool for the business. It was critical to obtain as much money as possible to purchase the very best equipment and gaming machines. I had negotiated a $1,500,000.00 line of credit on a lease purchase arrangement.

14.   Same as 12 and 13 above. My primary contact at Brady was Larry E. Cooke. I also consulted with Ken Anderson and Birmingham Vending on this aspect of the project. Brady had approved a line of credit in the amount of $600,000.00 due to my efforts.

15.   I met with hundreds of persons and made thousands of calls on this project. I worked on every aspect of starting, opening and running this business. I met with Realtors, kitchen specialists, equipment vendors, gaming vendors, lighting specialists, sign persons, City, County and State officials, lawyers, carpet persons. I met with every kind of person to see that this business opened.  I worked on plates, glasses and napkins for the business. I was

required to traveled with Fred Beasley to cover for his personal activities on the trips. I had to keep and maintain his secrets and other personal non-business confidences he placed on me. I was misled form the first time we meet to discuss the project in Montgomery. I was misled about Mr. Beasley's finances in that he informed me he had the finances to open a $3,000,000.00 facility. From the first day he asked me about helping him, he informed me that the facility would be a $3,000,000.00 facility. My agreement to come to Alabama and leave my family for six months was based upon 10% of this figure and this understanding and agreement. In fact, every loan obtained was difficult to arrange including the $100,000.00 loan from Compass. I had to do many, many personal favors for Fred and his family. I had to deal with his family, spouse, children and relatives daily. All the while, he would complain if I tried to spend one moment or any time with my family in California. Mr. Beasley complained openly to me and others about me spending one week vacation with my family during the entire summer of 2005. I met with Sandy Goodwin, met with hundreds of people, made hundreds of calls to establish this business and create a plan that would work in Montgomery. I spent hundreds of hours with architects, Realtors, sign designers, establishing the corporation, meeting with Mr. Beasley's attorney Randy Moore, obtained the liquor license, dealing with state, city and county officials on this project. I had to learn about the Alabama ABC board and its representatives. I established marketing contacts and insurance contacts. I established graphic designs, logos and other print information. All these efforts were made in contemplation of the 10% percentage promised me. All the while Fred intended to get all the way down the road and within weeks of opening and then fire me before any loan closing and stiff me on my fees. I should have seen this coming when every vendor that had an open invoice was not paid and came to me complaining and requesting my intervention to get paid. When these persons were complaining, we had a difficult time obtaining the $100,000.00 loan. Mr. Beasley refused to pay his attorney fees and the architectural fees despite their excellent service to Universal and Fred. I have provided many documents that set out many, many other services performed.

16.    Ken and Fred converted the plans, designs, relationships, concepts and business plan that was developed by me and the contacts I had established. Each person involved in this project was informed that I had been fired or terminated for cause. Each of these actions appear to have been taken by Fred and Universal to discharge me and take over the project in an effort to save 10%. These loans were pending and ready to close. I came to Alabama on the agreement I would be paid $300,000.00 or more when the project was funded and the loans approved. Ken and or Fred has called each of the contacts I established and informed them that I am a crook. They were informed that I had been terminated before any notice was provided to me. Theses contacts were informed to do business with Fred and Ken, not to listen to me. They were informed that all future contact should be through Fred or Ken. A current customer of mine named Sharon Ringgenberg was also called by Mr. Beasley and informed about alleged problems between Fred and myself. Fred told me he would put my name in the California papers if I sued him and did not drop my claim for compensation.

17.    See 16 above. Each of the contacts made to the vendors involved in this project and the false statements made to them will prevent me from using these contacts in the future.

Fred has tried in every way to damage my reputation with the vendors involved in this project.

18.    See 16 and 17 above. By not paying me per the contract, I have suffered major financial problems as seen in these requests. By requiring me to leave Montgomery on 1 days notice on the last day of the month and refusing to pay per the contracts, I have suffered severe financial distress and emotional distress. Mr. Beasley knew that the monthly stipend paid to me was used to pay my California mortgage and was necessary to my financial ability to pay my monthly bills in California. My family has suffered and my business has suffered due to Mr. Beasley providing me 24 hours notice of termination and no monthly payment for September or after. I have been sued in California due to the breach of this contract by Fred Beasley and Universal. I have had judgments entered against me in California and against my company due to the actions of Universal and Mr. Beasley. I set out the damages in the complaint.

19.    See 16, 17 and 18 above. I am due $15,000.00 for monthly contract payments. I am due at least $300,000.00 for commissions. I am due damages as set out in the complaint for willful breach of contract. I am entitled to be paid for the wrongful use of my work product without my permission. I am entitled to damages for Mr. Beasley and Universal's interference with my business relationships and contracts. The documents developed by me on this project are protected work product and the use of the same by Mr. Beaseley, Universal or any other person or business without my permission is a violation of Alabama Trade Secrets Act. The violation of this act allows punitive damages. All of the acts set out in the complaint have damaged me personally, financially and professionally.

20.    The information I prepared for this project belonged to Top Notch. Each item of information developed was intended for use in this business but was information belonging to Top Notch. The information contained systems, techniques, processes, patterns of practice, drawings, layouts and other specialized information. The information was not readily available to the general public. This information belonged to Top Notch. The information obtained and kept by Universal and Fred Beasley was obtained by breach of confidence, misrepresentation or conversion. All information belonging to Top Notch has been misappropriated.

21.    Tax returns for the years 2004 and 2005 will be provided.

22.    I do not know who my attorney will call at this time. I expect the persons named in these answers will be called. I expect that each company that approved a loan will be called upon to testify.

23.    These records have been produced or are currently in the possession of the Defendant.

24.    Randy Moore, Greg Lions, Mr. Beasley and myself.

25.    These records are readily available to the defendant as they have all the records.

26.    I signed the application with CEF at the direction of Fred Beasley and using the financial information Mr. Beasley requested that I provide to this and other potential loan companies. Specifically, when I called Mr. Beasley to discuss this particular application for credit and discussed this application he said, "Throw my signature on there and when original loan documents come in I will sign". This was a credit application for authorizing equipment financing.

27.    This question asks me to state in writing everything I did over a five month period. I worked 40 to 75 hours per week during this time and made thousands of telephone calls and went to many different cities and meet with hundreds of persons. There is no way to answer this question in writing and is onerous. If I were to set out everything I did for the five months I worked with Universal it would take hundreds of pages to write. The proof is in the letters of credit and loan approvals. I spent many hours on this but this task was not even suppose to be a part of this project. I was told that Fred had the $3,000,000.00 to set up this project. My original agreement was to coordinate the project and open the same. I was never informed that I would be required to spend time obtaining financing. I was not then nor now a financier. Fred misrepresented the project to me from the start. I knew I could set up the business within five months but it turned out that there was no financing and most every aspect of this project was delayed due to the false representation made to me from the start. I fully performed to the best of my ability while Fred just misrepresented the facts to me from the start. I lost six months of my business life due to the false statements and misrepresentation of Fred Beasley.

28.    Almost every item in the apartment or at the business was purchased by me. All of the items purchased are the property of Universal and in the possession of Universal except the fax machine. The fax machine is still in my possession as Mr. Beasley has not picked up the same nor provided me with shipping information.

**RESPECTFULLY SUBMITTED**, this the 20th day of October, 2005.

_____
William E. Brew

_____
Mark N. Chambless (CHA013)

CHAMBLESS ☐ MATH, P.C.
Attorneys at Law
Post Office Box 230759
Montgomery, AL 36123-0759
Office (334) 272-2230

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served on all parties or attorneys of record as set forth below by depositing a copy thereof in the United States mail postage prepaid on this __13__ th day of March, 2006.

OF COUNSEL

Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110

## Mark Chambless

**From:**     "Mark Chambless" <mchambless@chambless-math.com>
**To:**       "Jeff Smith" <jsmith@slatenlaw.com>
**Sent:**     Monday, March 13, 2006 2:22 PM
**Subject:**  Top Notch v Universal

Jeff  The original singed answers were delivered Saturday. I am filing the original today. I will mail you signed copy. Please give me several dates that you will be available to take depositions in and out of Alabama.
Mark N. Chambless
W)  334-272-2230



PLAINTIFF'S
EXHIBIT
5
Blumberg No. 5119

5/24/2006

## Mark Chambless

| | |
|---|---|
| **From:** | "Jeffrey W. Smith" <jsmith@slatenlaw.com> |
| **To:** | "Mark Chambless" <mchambless@chambless-math.com> |
| **Cc:** | "Terry Travis" <travisatty@bellsouth.net> |
| **Sent:** | Wednesday, March 15, 2006 10:57 AM |
| **Subject:** | Re: Top Notch v Universal |

Mark:

We aren't going to take any depositions until you comply with my discovery requests. We have talked numerous times about the response to my interoggatories and request for production. I want a face-to-face meeting so I can file another motion to compel. Let me know when you are available later this week.

The problems I have with your response are as follows:
1)What is his SS#? I am entitled to this.
2)Your client is lying to you, me and the court. His corporation was suspended by the California Secretary of State. I am entitled to an honest answer.
3)Thare is no listing of the information requested. I should not have to go through a box of loose documents to find the answer to a simple question. If your client has been sued and indicted so many times that he doesn't remember, let him say so.
4)No such list is attached.
5)"not applicable"? Ask your client about Sharon Ringgenberg. This is not a good faith response to discovery.
7) Not attached
9)This answer is non-responsive and totally inadequate.
10)This calls for a simple answer. I am entitled to one.
15)This is no response. We are entitled to know what your client claims he is due compensation for.
21)Not provided.
22)You still have not provided the initial disclosures called for in the court's order. I will object to your calling ANY witnesses at the trial of this case.
23)No documents were provided and no expenses were identified.
25)No response was provided.
27)Totally unresponsive.

I filed this discovery on November 22. It is March 15 and I still don't have a response with the exception of your faxed draft and 2 boxes of loose documents. Let me know when it is convenient to meet Thursday or Friday. In addition, Terry Travis represents Fred Beasley in this case. He has received nothing.

----- Original Message -----
**From:** Mark Chambless
**To:** Jeff Smith
**Sent:** Monday, March 13, 2006 1:22 PM
**Subject:** Top Notch v Universal

Jeff  The original singed answers were delivered Saturday. I am filing the original today. I will mail you signed copy. Please give me several dates that you will be available to take depositions in and out of Alabama.
Mark N. Chambless
W)   334-272-2230



PLAINTIFF'S
EXHIBIT
6

5/24/2006