UNITED STATES DISTRICT COURT for the
MIDDLE DISTRICT of ALABAMA

| | |
|---|---|
| TOP NOTCH CONSULTING, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:05-cv-996-MHT |
| | ) |
| UNIVERSAL CITY, LLC.; and | ) |
| FREDERICK J. BEASLEY, III | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S REPLY TO DEFENDANTS MOTION TO STRIKE SUBMISSION OF CONTRACT DOCUMENTS

Comes Now the Plaintiff by and through counsel of record and hereby responds to the Defendants Motion to Strike Plaintiff's Submission of Contract Documents and as cause would show as follows:

The Parties to the above styled lawsuit entered into negotiations for a management contract during the month of April 2005. Fred Beasely was represented in these negotiations by Attorney Randy Moore of Montgomery Alabama. Attorney Randy Moore was also employed by Fred Beasley to prepare and file his incorporation documents and generally represent Fred Beasley. See Exhibit C. These negotiations resulted in a contract being signed by the parties on or about the 28th day of April, 2005. The Management Agreement as signed is attached hereto as Exhibit A.

During the last week of July and during the first two days of August, the Plaintiff was contacted by both Fred Beasley and by his attorney Randy Moore. Attorney Randy Moore requested a modification to the contract whereby, William Brew would agree to remain on the project after the project opening date. William Brew was informed that the Defendants wanted him to train the Defendants Brother-in-law to run the facility. Mr. Brew was informed that the brother-in-law was in the military at the time but had agreed to retire from military service and come to Montgomery to run the facility for and with Fred Beasley. This information was relayed to William Brew by Fred Beasley and by Attorney Randy Moore.

Attorney Randy Moore prepared a draft of the agreement and faxed the same to William Brew on August 2, 2005. A copy of the faxed draft agreement from the law offices of Randy Moore is attached as Exhibit B. Fred Beasley's attorneys name appears at the top of the agreement. William Brew agreed to the same and was requested to come to the offices of Randy Moore to sign the original document. William Brew went to the offices of the Defendant's attorney and signed the agreement in the presence of Attorney Randy Moore. All these facts can be proven by affidavit if the Defendants Motion is converted into a motion for summary judgment supported by affidavits of the Defendants.

The Plaintiff signed the agreement which inures to the benefit of the Defendants, in that the Plaintiff agreed to work for a weekly wage of $850.00 plus the commissions set out in said agreement. The Plaintiff does not have a signed copy of the same. Attorney Randy Moore represented that the contract would be signed by Fred Beasley after William Brew signed. Prior to Plaintiff's termination, the signed original was never provided to the Plaintiff.

The Plaintiff acknowledges that the original Management Agreement contains a provision that states in paragraph 12 that, "This agreement shall not be changed, modified, or amended except in writing and signed by all parties". This language was inserted in said agreement and inures to the mutual benefit of both parties and is common in written contracts. Notwithstanding this clear language, Alabama, along with many other states, has long stated and adopted the contract rule that contracts can be modified by subsequent oral agreement. The Alabama Supreme Court has restated this principal in two recent cases. These case are: *Cook's Pest Control, Inc. v. Rebar*, 852 So.2d 730, Ala.,2002 and *Ex parte Coleman*, 861 So.2d 1080, Ala.,2003.

Specifically the Supreme Courts has held that, "Under Alabama law a written agreement may be modified by a subsequent oral agreement of the parties, unless some statutory provision provides otherwise.... This is so even where the contract contains a requirement that all modifications be in writing.". *Watson v. McGee*, 348 So.2d 461, 464 (Ala.1977). This writer could find no Alabama Statute prohibiting the oral modification of written contract.

The Defendants attempt to strike this amendment to the contract by motion and arguments of Counsel. The same should be considered and treated as a motion for summary judgement request. The same is unsupported by facts, law and improperly filed pursuant to Rule 56. When considering a summary judgment motion, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. Rules Civ.Proc., Rule 56(c). If substantial evidence in the record supports a cognizable claim pleaded by the Plaintiff, the Defendant is not due a summary judgment on that claim, even if the record also contains substantial countervailing evidence. Rules Civ.Proc., Rule 56(c)(3). Motions and arguments of counsel are not evidence; statements in motions are not evidence and are therefore not entitled to evidentiary weight.

The rule allowing proof of an oral modification of a contract, notwithstanding a requirement that all changes to a contract must be in writing, is based upon the premise that a party who has included such a provision in a contract for that party's benefit can certainly waive that provision. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Authority, 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. *System Dynamics Int'l, Inc. v. Boykin*, 683 So.2d 419 (Ala.1996). If substantial evidence in the record supports a cognizable claim pleaded by the plaintiff, the defendant is not due a summary judgment on that claim, even if the record also contains substantial countervailing evidence. *See Hollingsworth v. City of Rainbow City*, 826 So.2d 787 (Ala.2001); McGinnis v. Jim Walter Homes, Inc., 800 So.2d 140 (Ala.2001); *Ex parte Alfa Mut. Gen. Ins. Co.*, 742 So.2d 182, 184 (Ala.1999).

The Plaintiff alleged the modification in its complaint. The Defendant has offered no evidence against same except arguments of Counsel. The modification attached hereto shows the same was drafted by Attorney Randy Moore who is and was the attorney for Fred Beasely and Universal City. The contract amendment is signed by the Plaintiff. The existence of the contract itself is sufficient evidence of oral modification. The written signed contract of Plaintiff is substantial evidence in the record which supports a cognizable claim pleaded by the Plaintiff and the Defendant is not due a summary judgment on that claim, even if the record also contains substantial countervailing evidence

Wherefore, the above premises considered, the Plaintiff asserts that the Defendant's Motion to Strike is due to be denied

**RESPECTFULLY SUBMITTED**, this the 15th day of June, 2006.

_____
Mark N. Chambless (CHA013)

CHAMBLESS, MATH ❖ Carr, P.C.
Attorneys at Law
Post Office Box 230759
Montgomery, AL 36123-0759
Office (334) 272-2230

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served on all parties or attorneys of record as set forth below by depositing a copy thereof in the United States mail postage prepaid on this 15th day of June, 2006.

_____
OF COUNSEL

Jeffery W. Smith, Esq.
Post Office Box 1110
Montgomery, AL 36101-1110



EXHIBIT A

## MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement") is entered into this the 8th day of April 2005 by and between Universal City LLC, an Alabama Limited Liability Corporation (Universal) and Top Notch Consulting, Inc. (Top Notch), a California Corporation.

### BACKGROUND

Universal City, LLC. is endeavoring to create a full service entertainment and real estate development company designed to serve as a viable bridge from the NFL to the "World of Business". Universal will explore business opportunities in the areas of Entertainment, Office, Retail and Housing Development.

### RECITALS

WHEREAS, Universal is anticipating its needs into the next century by pursuing opportunities in the real estate development industry and entertainment industry; and

WHEREAS, Top Notch by reason of its experience, background, and professional contacts, is qualified and willing to render such services to Universal; and

WHEREAS, Universal desires to retain Top Notch to provide services pursuant to the terms and conditions hereinafter set forth in this Agreement;

NOW, THEREFORE, in consideration of the efforts expended and to be expended by them, and in consideration of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

### AGREEMENT

1. <u>Agreement to Provide Services:</u> Top Notch agrees to provide Universal the services outlined in Section 2 hereof, subject to and in accordance with the provisions of this Agreement.

2. <u>Scope of Services:</u> Top Notch shall provide the following services in connection with the development and financing of the Universal City Project (the Project):

   a. Prepare a complete business plan for the Project.

   b. Secure funding for the Project in a loan amount required by Universal.

   c. Prepare a budget for the Project, and determine the ongoing feasibility of the Project.

   d. Arrange, assist and advise with Project financing and construction.

e. Package documents, interview, and advise on the selection of lending institution(s);

f. Complete grant and loan applications and other applications for any other sources of financing or subsidy;

g. Negotiate on behalf of Universal with respect to contractual agreements and construction issues that arise during the preconstruction period;

h. Create project design and interior layouts for the permit process, and work with the city and county to assist with securing all government agency permits and licensing for the project;

I. Act as liaison between general contractor and Universal;

j. Coordinate any pre-construction meetings;

k. Review and bid documentation and make recommendations;

l. Advise on administrative, organizational, and management systems;

m. Participate in meeting with Universal clients, political officials, and others as deemed necessary and appropriate;

n. Produce a weekly Project Summary;

o. Complete the business plan.

P. Open and manage the project until Universal has obtained permanent management.

3. <u>Agreement to Engage:</u> In consideration of this Agreement, Universal agrees that they shall treat all materials prepared by Top Notch as confidential and shall not disclose, copy, or share such materials without written consent of Top Notch.

4. <u>Compensation:</u> In consideration for the services enumerated above, Universal shall pay to Top Notch a management fee of $5000.00 per month beginning in May, 2005 and each month thereafter until $25,000.00 is paid, plus reasonable expenses to include lodging, food, and transportation to be approved by Universal.

Upon closing the final loan a total percent of 10% will be split between mortgagee fees and expenses and Top Notch. All mortgagee expenses will be paid first and the balance of the 10% will be paid to Top Notch.

5. <u>Term:</u> The term of this Agreement shall be from the date hereof through the Grand Opening of the subject venue and continue with management until Universal has permanent management. Notwithstanding the foregoing, Universal may terminate this Agreement by providing Top Notch thirty (30) days written notice.

6. <u>Accounting and Right of Inspection:</u> Top Notch will maintain accurate books and records of all transactions concerning Universal. All said records solely relating to Universal may be inspected by Universal or a designated certified public accountant, during regular business hours, at Universal's sole expense. Universal shall provide Top Notch with written notification at least seven (7) days prior to the desired date of said inspection.

7. <u>Use of Other Consultants:</u> Universal acknowledges that Top Notch is not providing legal, engineering, architectural, or professional accounting services. To the extent that Top Notch or Universal believe that such professional services may be required, Top Notch will work with Universal to identify and negotiate costs and Statements of Work with appropriate individuals to provide such professional services.

8. <u>Assignment of Agreement:</u> No assignment of the rights or benefits and no delegation of duties provided in this Agreement may be made without the written consent of the non-assigning or non-delegating party; provided, however, that Top Notch may subcontract certain or all of the services to be performed under this Agreement. In such case, Top Notch shall still retain primary liability for their performance under this Agreement.

9. <u>Non-Compete Disclosure:</u> Top Notch agrees not to compete with Universal with respect to any Universal venture covered by this Agreement in the local market of such venture.

10. <u>Cancellation:</u> If for any reason Universal decides not to proceed with recommended development plans, Universal agrees to reimburse Top Notch for all expenses incurred in the development of the plans, applications, and other development related experiences.

11. <u>Saving Clause:</u> If one or more provisions of this Agreement or any application of any provision shall be deemed or declared invalid, illegal, or unenforceable in any respect, the validity, legality, or enforceability of the remaining provisions of this Agreement shall in no way be affected or impaired. The laws of the State of Alabama shall govern this Agreement. Any action to enforce, arising out of, or relating in any way to, any of the provisions of this Agreement shall be brought and prosecuted only in such court or courts located in the State of Alabama as is provided by law; and the parties consent to the jurisdiction of said court or courts located in the State of Alabama.

12. <u>Modification:</u> This Agreement shall not be changed, modified, or amended except in writing and signed by all parties.

13. <u>Status of Parties:</u>  The relationship created by the Agreement shall be, at all times and in all circumstances one of contractor/independent contractor and shall not be one of employer/employee. This Agreement shall not create a joint venture or partnership among the parties for any intents, purposes, and designs or in any activities or properties.

14. <u>No Continuing Waiver:</u> The waiver of any party of a breach of any provision of this Agreement shall not operate or be construed to be a waiver of any subsequent breach. No waiver shall be effective unless in writing and signed by the party against whom it is sought to be

enforced. A breach by one party of its duties to another party shall not, of itself, be deemed a breach by any other party of its obligations under this Agreement.

15. <u>Binding Nature:</u> This Agreement shall bind and inure to the benefit and burden of the parties, their personal representatives, successors and assigns.

16. <u>Integration:</u> This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement and supercedes all of the contemporaneous agreements or understandings of the parties in connection with this subject matter.

The parties hereto have executed this Agreement as of the date first set forth above.

Top Notch Consulting, Inc.

By: _____
William Brew, Its President

Universal City, LLC

By: _____
Fred Beasley, Its Manager


STATE OF _____
COUNTY OF _____

  I, the undersigned authority, a Notary Public for the State of _____, do hereby certify that **William Brew**, whose name is signed above; did personally appear before me this day and, being informed of the contents of the conveyance, did sign the same voluntarily.
  Given under my hand and seal this the _____ day of _____, 2005.

_____
Notary Public

My Commission Expires:_____

STATE OF CALIFORNIA )
COUNTY OF ALAMEDA   )

On May 5, 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared William Brew, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

*Carol A. Harpster*
NOTARY PUBLIC

CAROL A. HARPSTER
COMM. #1539682
NOTARY PUBLIC-CALIFORNIA
COUNTY OF ALAMEDA
My Comm. Exp. Dec. 30, 2008

## CONTRACT AMENDMENT

Paragraph four (4), page two (2) of said contract by and between Universal City, LLC and Top Notch Consulting, Inc. dated April 18, 2005 is hereby amended as follows:

Delete entire paragraph four(4) and in its stead place the following:

4. **Compensation**: In consideration for the services enumerated above, Universal shall pay to Top notch a management fee of $5000.00 per month beginning in May, 2005 and on the first of each month thereafter until the business is open for business, plus reasonable expenses to include lodging, food, insurance, and transportation to be approved by Universal. In addition, Top Notch is to be paid $850.00 per week to manage the facility after opening until a permanent manager can be obtained. Upon closing any financing, a total percent of 10% will be split between mortgage fees and expenses and Top Notch. All mortgagee expenses will be paid first and the balance of the 10% will be paid to Top Notch. Payment of the percentage loan fees will be made after closing final loan for said project.

The parties hereto have executed this Amendment as of August 2, 2005.

Top Notch Consulting, Inc.

By: _____William Brew, President_____
William Brew, Its President

Universal City, LLC.

By: _____
Fred Beasley, Its Manager

### Acknowledgment

STATE OF _____
COUNTY OF _____

I, the undersigned authority, a Notary Public for the State of _____, do hereby certify that **Top Notch Consulting, Inc.** Executed by **William Brew**, whose name is signed above; did personally appear before me this day and, being informed of the contents of the conveyance, did sign the same voluntarily.
Given under my hand and seal this the _____ day of _____, 2005.

_____
Notary Public

My Commission Expires: _____

EXHIBIT
B

CORP 256 PAGE 500

# ARTICLES OF ORGANIZATION

## OF

## UNIVERSAL CITY, L.L.C.,

an Alabama Limited Liability Company

April 26, 2005

R.B. Moore, III
Attorney at Law
4162 Carmichael Court
Montgomery, Alabama 36106
(334) 272-6464 Phone



EXHIBIT C

0527

CORP 256 PAGE 501

ARTICLES OF ORGANIZATION
OF
UNIVERSAL CITY, L.L.C.

Pursuant to the Alabama Limited Liability Company Act (the "Act"), the undersigned hereby adopt the following Limited Liability Company Articles of Organization:

## ARTICLE I
## ORGANIZATION

**Formation**: The Company is organized as an Alabama limited liability company as of the date of filing of these Articles of Organization (the "Articles").

**Name of Limited Liability Company**: The name of the limited liability company (the "Company") is:
"UNIVERSAL CITY, L.L.C."

**Period of Duration or Term**: The existence of the Company shall continue until terminated by agreement of the members or by operation of law.

**Purpose**: The Company's purposes are to create a full service entertainment and real estate development company designed to serve as a viable bridge from the NFL to the "World of Business". The Company will explore business opportunities in the areas of Entertainment, Office, Retail and Housing Development. In extension and not in limitation of the purposes specifically enumerated, the Company is authorized and empowered to engage in any lawful business in which limited liability companies may engage under the Act.

**Place of Business**: The location and mailing address of the initial registered office of the Company is: 1661 Eastern Bypass, Montgomery, AL 36117.

**Filings; Agent for Service of Process**: The name of the initial registered agent for the Company at the above address is: **Fred Beasley**, located at the address listed above.

**Names and Mailing Addresses of Initial Members of the Limited Liability Company**:

Fred Beasley
1661 Eastern Bypass
Montgomery, AL 36117

**Acting Manager**: The name and address of the Manager who is to serve until the first annual meeting of members, or until their successors are elected and qualified is:

Fred Beasley
1661 Eastern Bypass
Montgomery, AL 36117

Admission of Additional Members: No person may be admitted as an additional member without the unanimous written consent of the Members representing at least seventy-five (75%) percent of the interests in the capital and profits of the Company.

Management by Manager: The Manager shall manage the business of the Company pursuant to the terms of the Operating Agreement. The Manager shall continue to serve as Manager until removed by the Members as provided in the Agreement. The Manager individually shall have full authority to act for the Company, and may take any action, execute any document, or otherwise act for the Company with the full authority of Manager under the Act as agreed upon with respect to the Members. Duties are specifically outlined in the Operating Agreement.

Restrictions on the Manager: Notwithstanding anything in the Operating Agreement to the contrary, neither the Manager nor any Member shall have any authority to take any action not expressly delegated to such Manager or Member hereunder. Without limiting the generality of the preceding sentence, there are some restrictions on the Manager which are outlined in the Operating Agreement.

Resignation or Removal of Manager, Selection of Successor Manager: a) A Manager may resign as Manager upon ninety (90) days written notice to all Members. b) A Manager shall cease to be Manager and have no further authority to act for or bind the Company upon the occurrence of any "event of dissociation" (as defined in the Act) which causes the Manager to cease to be Member. c) A Manager may be removed as Manager by the affirmative vote of Members holding at least seventy-five (75%) percent of the Percentage Interests. d) If a Manager ceases to be a Manager for any reason, the Members must elect a successor Manager. e) A successor Manager, or Managers, shall be elected by the Members, by vote of Members holding at least seventy-five (75%) percent of the Percentage Interests, within thirty (30) days after the occurrence of any event which results in there being no Manager.

The Articles of Organization are executed by the initial Members as of the 26th day of April, 2005.

UNIVERSAL CITY, L.L.C.

Name/Title: Fred Beasley, Manager and Member

This Instrument Prepared by:
R.B. Moore, III
Attorney at Law
4162 Carmichael Court
Montgomery, AL 36106
(334) 272-6464 Phone

State of Alabama Montgomery Co
I Certify This Document
was filed on
5/11/05 4:05:52 PM   Abstract# 38353
Reese McKinney, Jr.
Judge of Probate

| LLC (Limited Liability Corp) | $40.00 |
|---|---|
| 1 Index Fee | $5.00 |
| 3 $0.00 per page fee | $0.00 |
| 1 Recording Fee | $35.00 |

0529